UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x

LOGAN LOREAUX, an infant by parent and
natural guardian KATELYN JONES; and
KATELYN JONES, individually; on behalf
of herself and all others similarly situated,

Case No.  3:14-CV-710-JAP-TJB

Plaintiffs,

-against-

ACB RECEIVABLES MANAGEMENT, INC.,
and JOHN DOES 1-25,

Defendants.

-----------------------------------------------------------------x

**AFFIDAVIT OF JILL C. OWENS, ESQ. IN SUPPORT OF DEFENDANT ACB
RECEIVABLES MANAGEMENT, INC.'S MOTION TO BIFURCATE DISCOVERY**

STATE OF NEW YORK     )
                               )   ss.:
COUNTY OF WESTCHESTER   )

JILL C. OWENS, ESQ. being duly sworn, deposes and says:

1.      I am member of the law firm Goldberg Segalla LLP, counsel for Defendant ACB Receivables Management, Inc., ("ACB") in the above-entitled action.  I have been admitted *pro hac vice* in this action.  I make this Affidavit on personal knowledge and from a review of information in the file maintained by my firm.

2.      Annexed hereto as Exhibit A is a true and correct copy of the Court's Letter Order of January 16, 2015, directing the filing of this motion to bifurcate merits and class discovery.

3.      Annexed hereto as Exhibits B through D, are true and correct copies of Plaintiffs' Notice to Produce Documents, Interrogatories, and Request for Admissions, respectively, all dated January 9, 2015.

4.      Annexed hereto as Exhibit E is a true and correct copy of the Memorandum

Opinion in *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, Civ. Action No. 12-

2132 (FLW)(TJB), dated February 4, 2014.

5.      Annexed hereto as Exhibit F is a true and correct copy of the unreported decision

in *Brittingham v. Cerasimo, Inc.*, 2:08-CV-216-TLS-PRC, 2008 U.S. Dist. LEXIS 99076, 6-7

(N.D. Ind. Dec. 8, 2008).

6.      Annexed hereto as Exhibit G is a true and correct copy of the Opinion in this

action of the Honorable Joel A. Pisano, U.S.D.J., dated November 26, 2015, denying ACB's pre-

Answer motion to dismiss the Complaint.

7.      I declare  under penalty of perjury that the foregoing is true and correct.

Executed on February 20, 2015

_____
Jill C. Owens

Sworn to before me this
20   day of February, 2015.

_____
Notary Public

HELEN TROTTA
Notary Public, State of New York
No. 01-TR6049123
Qualified in Westchester County
Commission Expires October 10, 20_18_

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(609) 989-2040**

CHAMBERS OF
**TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

**U.S. COURTHOUSE**
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

January 16, 2015

**LETTER ORDER**

Re:   **Loreaux, et al. v. ACB Receivables Management, Inc., et al.**
       **Civil Action No. 14-710 (JAP)**

Dear Counsel:

     As discussed during the Initial Conference held on January 13, 2015, merits discovery is to commence and be completed by **June 15, 2015**.   No later than **February 20, 2015**, Defendant shall file its motion to bifurcate merits and class discovery.   The parties may propound class discovery, but responses are stayed pending a decision on the motion to bifurcate.   A formal schedule shall be entered following a decision on said motion.

     **IT IS SO ORDERED.**

                      _____ s/ Tonianne J. Bongiovanni_____
                      **TONIANNE J. BONGIOVANNI**
                      **United States Magistrate Judge**

# EXHIBIT B

LOGAN LOREAUX, an infant by parent and
natural guardian KATELYN JONES; and,
KATELYN JONES, individually; on behalf
of herself and all others similarly situated,

Plaintiffs,

vs.

ACB RECEIVABLES MANAGEMENT,
INC., and JOHN DOES 1-25,

Defendants.

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

Civil Case No.: 3:14-cv-000710 JAP-TJB

**NOTICE TO PRODUCE DOCUMENTS**

To:       Jonathan S. Ziss, Esq.
          Goldberg Segalla, LLP
          1700 Market Street, Suite 1418
          Philadelphia, PA 19103-3907
          jziss@goldbergsegalla.com
          *Attorneys for ACB Receivables Management, Inc.*

**PLEASE TAKE NOTICE** that Plaintiff, by her counsel hereby requests that <u>ACB</u>
<u>Receivables Management, Inc.</u>, produce for copying and inspection, at Law Offices of Joseph K.
Jones, LLC, 375 Passaic Avenue, Suite 100, Fairfield, New Jersey 07004, within 30 days of the
date of service hereof, the documents and other materials described below.

The obligation to produce the documents and materials requested herein is of a
continuing nature; if at any time after compliance with this request you should acquire
possession, custody or control of any documents within the scope of the request, you are
requested promptly to furnish such documents.

## DEFINITIONS

1.    The term "CONCERNING" or "CONCERN" means prepared, made, obtained, received, transmitted in connection with, evidencing, referring to, pertaining to, alluding to, relating to, connected with, commenting upon, in respect of, about, regarding, discussing, reflecting, analyzing, explaining, evaluating, summarizing, describing, touching upon, constituting, sent to, served upon, mailed, delivered to, or referencing in any way.

2.    "ALL" means all or any, and the term "any" means any or all.

3.    The term "YOU" or "YOUR" means ACB Receivables Management, Inc., and any of its subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, board of directors or committees thereof, present and former officers, directors, employees, representatives, agents and all other persons acting or purporting to act on its behalf.

4.    The term "DOCUMENT" means any and all tangible things upon which any expression, communication or representation is reflected or has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostating, photographing, magnetic impulse, or mechanical, phonic or electronic recording, computerized data whether on disk, hard drive or otherwise, and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that the copies were sent to different individuals than were the originals, or any other reason), including but not limited to abstracts, agreements, analyses, blueprints, books, brochures, circulars, compilations, consultants' reports or studies, contracts, databases, files, graphs, insurance policies, letters, lists, manuals, maps, notebooks, opinions, pamphlets, papers, pictures, plans, projections, press releases or clippings, publications, reports, working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, minutes or records of any sort of meeting, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, telephone message slips, desk calendars, appointment books, computer tapes, computer disks, computer printouts, computer cards, electronically stored data, and all other writings and recordings of any kind.

5.     "DEBT" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

6.     "AGENT" or "REPRESENTATIVE" means someone or some entity with the power or authority to act on your behalf or acts at your request.

7.     "CONSUMER" means any natural person obligated or allegedly obligated to pay any debt.

8.     "MEMBERS OF THE CLASS"  means All New Jersey consumers who were sent collection letters and/or notices from the Defendants, attempting to collect debts owed to or allegedly owed to SOCH MEDICAL GROUP, PC., which stated an Amount Due, which is different than the amount stated as the Amount Owed.

9.     "CLASS PERIOD" means the period from February 4, 2013 through the present.

## **INSTRUCTIONS**

1.      YOU are to furnish all DOCUMENTS or things in YOUR possession, custody or control, regardless of whether such DOCUMENTS or materials are possessed directly by YOU or YOUR directors, offices, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by YOUR attorneys or their agents, employees, representatives or investigators.

2.      In producing DOCUMENTS, YOU are requested to produce the original of each DOCUMENT requested, together with all non-identical copies and drafts of such DOCUMENT. If the original of any DOCUMENT cannot be located, a copy shall be produced in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

3.      If any requested DOCUMENT or thing cannot be produced in full, YOU are to produce it to the extent possible, indicating which DOCUMENT, or portion of such DOCUMENT, is being withheld, and the reason that DOCUMENT is being withheld.

4.      DOCUMENTS not otherwise responsive to the following Requests for Production shall be produced if such DOCUMENTS mention, discuss, refer to, or explain the DOCUMENTS that are called for by these Requests, or if such DOCUMENTS are attached to DOCUMENTS called for by these Requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluations or similar materials.

5.      All DOCUMENTS shall be produced in the same order as they are kept or maintained by YOU in the ordinary course of business.

6.      All DOCUMENTS shall be produced in the file folder, envelope or other container in which the DOCUMENTS are kept or maintained by YOU.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

7.      DOCUMENTS shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each DOCUMENT'S custodian(s). DOCUMENTS attached to each other should not be separated.

8.      If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not producing any DOCUMENT, or any part thereof, each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim of privilege is valid, shall be set forth in complete detail. With respect to a DOCUMENT to which a privilege is being claimed, the following information at the very minimum should be provided:

(a)      date;

(b)      author;

(c)      names and addresses of any persons who receive copies, if any;

(d)      title;

(e)      type of tangible thing, letter, memorandum, telegram, report, etc.; and

(f)      general description of the subject matter (without revealing privileged information).

9.      If any of the DOCUMENTS referred to in response the following Requests for Production have been lost, destroyed, removed from YOUR files or altered in any manner after the DOCUMENT was initially made, taken or prepared, provide the following information:

(a)      a description of the DOCUMENT

(b)      the date of each such occurrence;

(c)      a description of each such occurrence, including the nature of each altercation and the circumstances of the loss, destruction or removal;

(d)      the reason for each such occurrence;

(e)      the name, address and job title of the persons who took such action;

(f)      the name, address and job title of the persons who authorized, directed or acknowledged the action at the time it was taken; and

(g)      whether there has been any attempt to produce, duplicate or find a copy of any lost, destroyed, or originally unaltered DOCUMENTS, and, if so, a description of the attempt and its result.

10.     Except as otherwise provided, these Requests for Production of shall be deemed to be continuing and any information or DOCUMENTS relating in any way to these Requests for Production which YOU acquire, which become known to YOU up to and including the time of trial, shall be furnished by YOU to Plaintiff within a reasonable time after such information is acquired or becomes known. Similarly, any information or DOCUMENTS provided in response to these Requests for Production which is later found to be incomplete or incorrect, or to have become incomplete or incorrect because of changed circumstances should be completed or corrected by means of supplemental responses.

11.     The past tense of a verb includes the present and the present tense includes the past where the clear meaning is not distorted by the change of tense.

12.     The plural of any word includes the singular, and the singular includes the plural.

## DOCUMENTS TO BE PRODUCED

1.  ALL DOCUMENTS CONCERNING the DEBT allegedly owed by Plaintiff and the collection thereof.

2.  ALL DOCUMENTS CONCERNING the DEBT allegedly owed by ALL MEMBERS OF THE CLASS to YOU or any third party and the collection thereof created or modified during the CLASS PERIOD.

3.  ALL DOCUMENTS, including but not limited to ALL form letters, enclosures, envelopes, memoranda, used by the Defendant in its debt collection activity related to the account of Plaintiff and/or ALL MEMBERS OF THE CLASS related to Defendant's attempts to collects alleged debts during the CLASS PERIOD.

4.  The complete collection file(s), including but limited to computer files, digital files and physical files, maintained by Defendant CONCERNING the Plaintiff including but not limited to ALL DOCUMENTS, including but not limited to notes of contacts or communications, copies of collection letters, copies of checks or other payments, collection logs, accounts, ledgers, applications, interview forms.

5.  The complete collection file(s), including but limited to computer files, digital files and physical files, maintained by Defendant CONCERNING ALL MEMBERS OF THE CLASS including but not limited to ALL DOCUMENTS, including but not limited to notes of contacts or communications, copies of collection letters, copies of checks or other payments, collection logs, accounts, ledgers, applications, interview forms created or modified during the CLASS PERIOD.

6.  ALL DOCUMENTS sent to or received from ANY MEMBERS OF THE CLASS concerning a debt allegedly owed during the CLASS PERIOD.

7.  ALL DOCUMENTS allegedly signed by the Plaintiff.

8.  ALL DOCUMENTS allegedly signed by ALL MEMBERS OF THE CLASS.

9.  ALL periodic statements of account issued by the original creditor and/or subsequent creditor CONCERNING the debt allegedly owed by Plaintiff.

10. ALL periodic statements of account issued by the original creditor and/or subsequent creditor CONCERNING the debt allegedly owed by ALL MEMBERS OF THE CLASS during the CLASS PERIOD.

11. ALL DOCUMENTS CONCERNING the allegations of the complaint(s).

12. ALL DOCUMENTS relied upon or referred to by YOU in preparing YOUR answers to interrogatories propounded by this Plaintiff, which DOCUMENTS were not identified in YOUR answers to such interrogatories.

13. ALL insurance policies insuring the Defendant for violations of the Fair Debt Collection Practices Act in effect during the CLASS PERIOD.

14. Copies of ALL policy manuals and instructions provided by Defendant to employees regarding collection practices or procedures in effect during the CLASS PERIOD.

15. ALL DOCUMENTS that in any way document, describe, prove, explain or otherwise evidence YOUR NET WORTH.

16. ALL federal and state income tax returns of the Defendant filed since January 1, 2012.

17. ALL financial reports and statements provided to Defendant's investors since January 1, 2012.

18. The most recent financial statement issued, or given to any third party, by the Defendant since January 1, 2012.

19. ALL expert reports regarding this matter.

20. ALL curriculum vitae of ALL individuals contacted as potential expert witnesses.

21. Produce YOUR records (typewritten, handwritten, and computer-generated) of YOUR attempts to collect the DEBT from Plaintiff.

22. Produce all recordings (including audio and video) and any typed or written transcript thereof, that evidence YOUR attempt to collect the DEBT allegedly owed by Plaintiff.

23. Produce copies of only the pages of YOUR telephone billing records which indicate calls placed by YOU when attempting to collect the DEBT allegedly owed by Plaintiff.

24. Produce all audio recordings of the Plaintiff and Plaintiff's attorneys.

25. Copies of all emails you sent or received from Plaintiff.

26. Produce all records of disciplinary action against all natural persons who attempted to collect the DEBT allegedly owed by Plaintiff.

27. Produce all debt collection training records of all natural persons who attempted to collect the DEBT allegedly owed by Plaintiff.

28. Produce copies of all Better Business Bureau complaints received by YOU during the last three years which include allegations that one of YOUR employees or agents engaged in improper debt collection practices.

29. Produce all documents evidencing any felony conviction of natural persons who attempted to collect the DEBT allegedly owed by Plaintiff.

30.  Produce all form letters and telephone scripts YOU used to attempt to collect the DEBT allegedly owed by Plaintiff.

31.  Produce the user and programming manuals for the collection software you used to collect the DEBT allegedly owed by Plaintiff.

32.  Produce all documents which list, define, or act as a key for, codes and abbreviation YOU use for YOUR collection software when attempting to collection the DEBT allegedly owed by Plaintiff.

33.  Produce all documents that indicate or suggest that Plaintiff does not owe any monies for the alleged DEBT.

34.  All written agreements and contracts between YOU and SOCH Medical Group, PC., executed on or before February 4, 2014.

35.  All documents YOU intend to produce at the trial of this matter.


Dated: January 9, 2015


                        *s/ Joseph K. Jones*
                        Joseph K. Jones, Esq.
                        Law Offices of Joseph K. Jones, LLC
                        375 Passaic Avenue, Suite 100
                        Fairfield, New Jersey 07004
                        (973) 227-5900 telephone
                        (973) 244-0019 facsimile
                        jkj@legaljones.com

                        *Attorneys for Plaintiffs*

## CERTIFICATION OF SERVICE

I, Joseph K. Jones, hereby certify that on this date I caused to be served the following

papers:

### NOTICE TO PRODUCE DOCUMENTS AS TO
### ACB RECEIVABLES MANAGEMENT, INC.

upon:

        Jonathan S. Ziss, Esq.
        Goldberg Segalla, LLP
        1700 Market Street, Suite 1418
        Philadelphia, PA 19103-3907
        jziss@goldbergsegalla.com
        *Attorneys for ACB Receivables Management, Inc.*

by electronic mail, facsimile and first class mail.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2015.

                                   *s/ Joseph K. Jones*
                                   Joseph K. Jones

# EXHIBIT C

LOGAN LOREAUX, an infant by parent and
natural guardian KATELYN JONES; and,
KATELYN JONES, individually; on behalf
of herself and all others similarly situated,

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Case No.: 3:14-cv-000710 JAP-TJB

Plaintiffs,

vs.

ACB RECEIVABLES MANAGEMENT,
INC., and JOHN DOES 1-25,

Defendants.

## PLAINTIFFS' INTERROGATORIES SERVED ON DEFENDANT
## ACB RECEIVABLES MANAGEMENT, INC.

To:　　　　Jonathan S. Ziss, Esq.
　　　　　　Goldberg Segalla, LLP
　　　　　　1700 Market Street, Suite 1418
　　　　　　Philadelphia, PA 19103-3907
　　　　　　jziss@goldbergsegalla.com
　　　　　　*Attorneys for ACB Receivables Management, Inc.*

**PLEASE TAKE NOTICE** that Plaintiff, through her counsel request that the Defendant,

ACB Receivables Management, Inc., answer under oath, in accordance with Rule 33 of the

Federal Rules of Civil Procedure, the following Interrogatories.

## GENERAL INSTRUCTIONS

1.      Each interrogatory is to be fully and separately answered, and before each answer is given, the interrogatory being answered is to be set forth in full.

2.      As to those interrogatories consisting of a number of parts, a complete answer is required to each such part as if it were propounded as a separate interrogatory, should an objection to an interrogatory be interposed, it should indicate the part of the interrogatory to which it is directed.

3.      Where YOU are requested to identify PERSON, DOCUMENTS, or occurrences, the identification shall be completely detailed.

(a)  In the case of a PERSON, it shall include, but shall not be limited to full name, present or last known home and business addresses and telephone numbers, past and present relationships to you, present or last known positions with an employer, and, if such PERSON is or was employed at any time by you, all positions held with you.

(b)      In the case of a document, the identification shall include, but not be limited to, a complete description setting forth the title, date, by who originated, to whom directed, general subject matter, present location(s) and present custodian(s) (who shall be identified in the same matter as PERSONS are identified).

(c)      In the case of a representation or disclosure, the identification shall include the date, time, place, manner of communication, substance of the representation or disclosure, the PERSON or PERSONS, who made the representation or disclosure, and the PERSON or PERSONS to whom it was made.

4.      With respect to each interrogatory, if YOU are able to provide some, but not all, of the information requested, provide such information as YOU are able, and identify specially the item or aspects as to which YOU do not have sufficient information to respond fully.

5.      If YOU refuse to answer any interrogatory in whole or in part, state the grounds of such refusal, including any claim of privilege or other claim of immunity from disclosure in sufficient detail to permit the court to adjudicate the validity of the refusal.  In addition, identify (in accordance with general instruction three [3.]) each DOCUMENT and/or communication for which the privilege is claimed; the date of the DOCUMENT and/or communication; the identity of each participant, author and signatory; a description of the general subject matter and contents of the DOCUMENT and/or communication; the present location and custodian of the DOCUMENT and/or communication; and the identity of all PERSONS to whom the contents of the DOCUMENT and/or communication have been disclosed.

6.      These interrogatories shall be deemed continuing so as to require supplemental responses or production or additional DOCUMENTS in the event YOU or YOUR representative, learn additional facts not set forth in its answers or discovery that the information given in the answers is erroneous or incomplete.

## DEFINITIONS

1. The term "CONCERNING" or "CONCERN" means prepared, made, obtained, received, transmitted in connection with, evidencing, referring to, pertaining to, alluding to, relating to, connected with, commenting upon, in respect of, about, regarding, discussing, reflecting, analyzing, explaining, evaluating, summarizing, describing, touching upon, constituting, sent to, served upon, mailed, delivered to, or referencing in any way.

2. "ALL" means all or any, and the term "any" means any or all.

3. The term "YOU" or "YOUR" means <u>ACB Receivables Management, Inc.</u> and any of its subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, board of directors or committees thereof, present and former officers, directors, employees, representatives, AGENTS and all other PERSONS acting or purporting to act on its behalf.

4. "ACB" means <u>ACB Receivables Management, Inc.</u>

5. "PERSON" means a natural person, a group of natural persons acting as individuals, a group of natural persons acting in a collegial capacity (<u>e.g.</u>, as a committee (board of directors), a corporation, partnership, proprietorship, joint venture, firm, association, government or government agency and/or any other business, government or social entity, and any employee or agent thereof).

6. DESCRIBE" means, in the case of an act, event, transaction, relationship, thing or occurrence: A) A detailed description, including identification of dates, places, persons involved, and means employed; B) Identification of YOUR sources of information concerning such act, event, transaction, thing or occurrence, including the date YOU received such information; C) Identification of each person having knowledge of such act, event, transaction, thing or occurrence; and D) Identification of each communication and each DOCUMENT relating to such act, event, transaction, thing or occurrence.

7. The term "DOCUMENT" means any and all tangible things upon which any expression, communication or representation is reflected or has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostating, photographing, magnetic impulse, or mechanical, phonic or electronic recording, computerized data whether on disk, hard drive or otherwise, and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that the copies were sent to different individuals than were the originals, or any other reason), including but not limited to abstracts, agreements, analyses, blueprints, books, brochures, circulars, compilations, consultants' reports or studies, contracts, databases, files, graphs, insurance policies, letters, lists, manuals, maps, notebooks, opinions, pamphlets, papers, pictures, plans, projections, press releases or clippings, publications, reports, working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, minutes or records of any sort of meeting, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, telephone message slips, desk calendars, appointment books, computer tapes, computer disks, computer printouts, computer cards, electronically stored

data, and all other writings and recordings of any kind.

8. "DEBT" means any obligation or alleged obligation of a CONSUMER to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

9. "AGENT" or "REPRESENTATIVE" means someone or some entity with the power or authority to act on YOUR behalf or acts at YOUR request.

10. "CONSUMER" means any New Jersey natural PERSON obligated or allegedly obligated to pay any DEBT.

11. "MEMBERS OF THE CLASS" means All New Jersey consumers who were sent collection letters and/or notices from the Defendants, attempting to collect debts owed to or allegedly owed to SOCH MEDICAL GROUP, PC., which stated an Amount Due, which is different than the amount stated as the Amount Owed

12. "CLASS PERIOD" means the period from February 4, 2013 through the present.

13. "NET WORTH" means the total of all of your assets (stocks, bonds, bank accounts, real estate, property, business receivables, notes receivable, etc.) minus the total of your liabilities (outstanding loans owed, credit card balances, taxes payable, bills payable, etc.).

14. "REGULARLY" as used herein means customary, usual, or normal.  For purposes of this definition, the responding party shall understand that the event in question has happened at least 30 times.

15. "ATTEMPTS" or "ATTEMPTED" as used herein means to make an effort to do or accomplish.

## **INTERROGATORIES**

1. State the full legal name of the corporation, LLC or other such name of the Defendant, and any and all fictitious names used by Defendant in the state of New Jersey, together with the state of incorporation and state(s) in which Defendant is registered to do business.

2. State the name, title, business address, job title and capacity of each officer(s), employee(s) and/or AGENT(s) answering or providing any information used to answer each interrogatory.

3. State the net worth of "ACB" and how it was calculated.  Provide a copy of all DOCUMENTS used and/or relied on in determining the Defendant's net worth and how it was calculated.

4. State the name, title, address and job description of each director, partner, shareholder, employee, officer, and manager of Defendant who authorized, approved, or was aware of the collection letters and/or notices that was sent to Plaintiff, which is attached to the Complaint as Exhibit A.

5. State the number of CONSUMERS located in New Jersey that were sent a letter or notice by YOU similar to that of <u>Exhibit A</u>, attached to the First Amended Complaint, concerning a SOCH MEDICAL GROUP, PC. debt,  which stated an Amount Due, which is different than the amount stated as the Amount Owed, during the CLASS PERIOD.

6.    State the number of CONSUMERS located in New Jersey that were sent a letter or notice by YOU similar to that of Exhibit A, attached to the First Amended Complaint, concerning a debt,  which stated an Amount Due, which is different than the amount stated as the Amount Owed, during the CLASS PERIOD

.

7.    Identify by title, author, subject, and date any reports, memoranda, etc., YOU possess regarding the use of notices similar to those sent to the Plaintiffs attached to the First Amended Complaint as Exhibit A.

8.    If any type of computer records are kept by YOU CONCERNING, pertaining and/or relating to Plaintiff(s) and/or MEMBERS OF THE CLASS, state the name of the program in which the record(s) is kept, and attach hereto a complete and true copy of those records, together with an explanation of all abbreviations used in those records, which should include, but not be limited to, the complete names of all individuals making entries or referred to in said records.

9.    Identify and DESCRIBE each DOCUMENT known to Defendant CONCERNING the accounts of either Plaintiff, including but not limited to all correspondence or other DOCUMENTS that has been generated by YOU and/or on YOUR behalf in connection with the account that YOU were attempting to collect on from Plaintiff.

10.    Identify and DESCRIBE each DOCUMENT known to Defendant CONCERNING the accounts of either Plaintiff, including but not limited to all correspondence or other DOCUMENTS that has been provided to YOU in connection with the account that YOU were attempting to collect on from Plaintiff.

11.   Identify and DESCRIBE each PERSON known to Defendant CONCERNING the accounts of either Plaintiff, including but not limited to all correspondence or other DOCUMENTS that were initiated by YOU and/or on YOUR behalf in connection with the account that YOU were attempting to collect on from Plaintiff.

12.   State in detail what payments were made by Plaintiff and MEMBERS OF THE CLASS to YOU and/or to any AGENT of YOU or predecessor entity, including the dates, manner and amount of each payment, the date that YOU claim default occurred; and the date of the last payment made by Plaintiff and MEMBERS OF THE CLASS.  In response to this Interrogatory, please provide all DOCUMENTS, which explain and support YOUR answers herein.

13.   State the name, address and phone number(s) of all PERSONS who have knowledge of any relevant facts relating to this action.

14.   If any written statement, communication or report exists made by any PERSON not a party to this case relating to this litigation, the facts of this litigation or any of the allegations contained in the pleadings filed in this litigation, identify the written statement, communication or report, together with each PERSON making such statement, communication or report, and provide a summary of the contents of each such statement, communication or report.

15.   DESCRIBE in detail how YOU determined what amounts to demand or request from the Plaintiff and MEMBERS OF THE CLASS for the accounts YOU were attempting to collect from Plaintiff and MEMBERS OF THE CLASS, including but not limited to how YOU determined what balance was due from Plaintiff(s) and MEMBERS OF THE CLASS; how YOU determined the principal balance that was due from Plaintiffs and MEMBERS OF THE CLASS; how YOU determined the amount of interest due from Plaintiffs and MEMBERS OF THE CLASS.  In response to this Interrogatory, please provide all DOCUMENTS, which relate to, explain and/or support YOUR answers herein.

16.    State in detail all procedures that YOU claim were in place in an effort to comply with the Fair Debt Collection Practices Act and specifically as to the claims raised by Plaintiffs, together with the dates that such procedures were implemented.   In response to this Interrogatory, please identify and annex hereto all DOCUMENTS (including, but not limited to, copies of any and all written policies and procedures contained in compliance manuals, emails, and internal memoranda) which explain and support YOUR answers herein.

17.    Have YOU or YOUR attorney(s) made any audio recording recordings of either Plaintiff or her attorneys within the last two years (excluding recordings made during depositions)?

18.    State the names and addresses of any and all proposed witnesses you intend to call at trial or who have any knowledge of the facts and circumstances of this case.

19.    State the date Plaintiff's debt was placed with and/or assigned to "ACB".

20.    State the balance due on Plaintiff's debt on the date the debt was placed with and/or assigned to "ACB".

21.    List the dates and amount of every increase of Plaintiff's balance due while the account was placed with and/or assigned to "ACB.

22.    List the dates and amount of every increase of Plaintiff's balance due while the account was placed with and/or assigned to "ACB".

23.    State the name, address, telephone, and contact information of the person(s) and/or company that placed Plaintiff's debt with "ACB"

24.   State the caption and case number of all lawsuits naming "ACB" as a defendant, which included allegations of violations of the Fair Debt Collection Practices, Act, within the past 5 years.

Dated: October 20, 2014

*s/ Joseph K. Jones*
Joseph K. Jones, Esq.
Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com

*Attorneys for Plaintiffs*

## CERTIFICATION

I hereby certify that the copies of the reports annexed hereto rendered by either treating physicians or proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports pf said doctors or experts, either written or oral, are unknown to me, and if such become later known or available, I shall serve them promptly on the propounding party.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____

DATED:

## CERTIFICATION OF SERVICE

I, Joseph K. Jones, hereby certify that on this date I caused to be served the following papers:

### PLAINTIFFS' REQUESTS FOR ADMISSIONS SERVED ON DEFENDANT, ACB RECEIVABLES MANAGEMENT, INC.

upon:

>Jonathan S. Ziss, Esq.
>Goldberg Segalla, LLP
>1700 Market Street, Suite 1418
>Philadelphia, PA 19103-3907
>jziss@goldbergsegalla.com
>*Attorneys for ACB Receivables Management, Inc.*

by electronic mail, facsimile and first class mail.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2015

>s/ *Joseph K. Jones*
>Joseph K. Jones

# EXHIBIT D

| | |
|---|---|
| LOGAN LOREAUX, an infant by parent and natural guardian KATELYN JONES; and, KATELYN JONES, individually; on behalf of herself and all others similarly situated, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br><br>Civil Case No.: 3:14-cv-000710 JAP-TJB |

Plaintiffs,

vs.

ACB RECEIVABLES MANAGEMENT,
INC., and JOHN DOES 1-25,

Defendants.

## PLAINTIFFS' REQUEST FOR ADMISSIONS SERVED ON DEFENDANT, ACB RECEIVABLES MANAGEMENT, INC.

To:     Jonathan S. Ziss, Esq.
        Goldberg Segalla, LLP
        1700 Market Street, Suite 1418
        Philadelphia, PA 19103-3907
        jziss@goldbergsegalla.com
        *Attorneys for ACB Receivables Management, Inc.*

**PLEASE TAKE NOTICE** that Plaintiff, through their counsel requests that the

Defendant, <u>ACB Receivables Management, Inc.,</u> in accordance with Rule 36 of the Federal

Rules of Civil Procedure, answer the following Requests for Admission.

## DEFINITIONS

1. The term "CONCERNING" or "CONCERN" means prepared, made, obtained, received, transmitted in connection with, evidencing, referring to, pertaining to, alluding to, relating to, connected with, commenting upon, in respect of, about, regarding, discussing, reflecting, analyzing, explaining, evaluating, summarizing, describing, touching upon, constituting, sent to, served upon, mailed, delivered to, or referencing in any way.

2. "ALL" means all or any, and the term "any" means any or all.

3. The term "YOU" or "YOUR" means <u>ACB Receivables Management, Inc.,</u> and any of its subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, board of directors or committees thereof, present and former officers, directors, employees, representatives, AGENTS and all other PERSONS acting or purporting to act on its behalf.

4. "ACB" means <u>ACB Receivables Management, Inc.</u>

5. "PERSON" means a natural person, a group of natural persons acting as individuals, a group of natural persons acting in a collegial capacity (<u>e.g.,</u> as a committee (board of directors), a corporation, partnership, proprietorship, joint venture, firm, association, government or government agency and/or any other business, government or social entity, and any employee or agent thereof).

6. DESCRIBE" means, in the case of an act, event, transaction, relationship, thing or occurrence: A) A detailed description, including identification of dates, places, persons involved, and means employed; B) Identification of YOUR sources of information concerning such act, event, transaction, thing or occurrence, including the date YOU received such information; C) Identification of each person having knowledge of such act, event, transaction, thing or occurrence; and D) Identification of each communication and each DOCUMENT relating to such act, event, transaction, thing or occurrence.

7. The term "DOCUMENT" means any and all tangible things upon which any expression, communication or representation is reflected or has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostating, photographing, magnetic impulse, or mechanical, phonic or electronic recording, computerized data whether on disk, hard drive or otherwise, and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that the copies were sent to different individuals than were the originals, or any other reason), including but not limited to abstracts, agreements, analyses, blueprints, books, brochures, circulars, compilations, consultants' reports or studies, contracts, databases, files, graphs, insurance policies, letters, lists, manuals, maps, notebooks, opinions, pamphlets, papers, pictures, plans, projections, press releases or clippings, publications, reports, working papers, preliminary, intermediate or final

drafts, correspondence, memoranda, charts, notes, minutes or records of any sort of meeting, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, telephone message slips, desk calendars, appointment books, computer tapes, computer disks, computer printouts, computer cards, electronically stored data, and all other writings and recordings of any kind.

8. "DEBT" means any obligation or alleged obligation of a CONSUMER to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

9. "AGENT" or "REPRESENTATIVE" means someone or some entity with the power or authority to act on YOUR behalf or acts at YOUR request.

10. "CONSUMER" means any New Jersey natural PERSON obligated or allegedly obligated to pay any DEBT.

11. "MEMBERS OF THE CLASS" means All New Jersey consumers who were sent collection letters and/or notices from the Defendants, attempting to collect debts owed to or allegedly owed to SOCH MEDICAL GROUP, PC., which stated an Amount Due, which is different than the amount stated as the Amount Owed.

12. "CLASS PERIOD" means the period from February 4, 2013 through the present.

13. "NET WORTH" means the total of all of your assets (stocks, bonds, bank accounts, real estate, property, business receivables, notes receivable, etc.) minus the total of your liabilities (outstanding loans owed, credit card balances, taxes payable, bills payable, etc.).

14. "REGULARLY" as used herein means customary, usual, or normal. For purposes of this definition, the responding party shall understand that the event in question has happened at least 30 times.

15. "ATTEMPTS" or "ATTEMPTED" as used herein means to make an effort to do or accomplish.

## REQUESTS FOR ADMISSION

1.    "ACB" REGULARLY collects DEBTS owed or due to it.

2.    "ACB" REGULARLY collects DEBTS owed or due to third parties.

3.    The principal business engaged in by "ACB" is the collection of DEBTS.

4.    "ACB" has attempted collection of at least 50 DEBTS during the year 2013.

5.    "ACB" has attempted collection of at least 500 DEBTS during the year 2013.

6.    "ACB" has attempted collection of at least 50 DEBTS during the year 2014.

7.    "ACB" has attempted collection of at least 1,000 DEBTS during the year 2014.

8.    The NET WORTH of "ACB" is equal to or greater than $200,000.

9.    The NET WORTH of "ACB" is equal to or greater than $500,000.

10.   The NET WORTH of "ACB" is equal to or greater than $1,000,000.

11.   The NET WORTH of "ACB " is equal to or greater than $2,000,000.

12.   During the time period of February 4, 2014 to the present, "ACB" sent a letter or notice on behalf of itself or SOCH MEDICAL GROUP, PC. to at least 50 New Jersey CONSUMERS similar to that of "Exhibit A" attached the First Amended Complaint, which stated which stated an Amount Due, which is different than the amount stated as the Amount Owed.

13.   During the time period of February 4, 2014 to the present, "ACB" sent a letter or notice on behalf of itself or SOCH MEDICAL GROUP, PC. to at least 100 New Jersey CONSUMERS similar to that of "Exhibit A" attached the First Amended Complaint,

which stated which stated an Amount Due, which is different than the amount stated as the Amount Owed.

14.    During the time period of February 4, 2014 to the present, "ACB" sent a letter or notice on behalf of itself or SOCH MEDICAL GROUP, PC. to at least 500 New Jersey CONSUMERS similar to that of "Exhibit A" attached the First Amended Complaint, which stated which stated an Amount Due, which is different than the amount stated as the Amount Owed.

15.    During the time period of February 4, 2014 to the present, "ACB" sent a letter or notice on behalf of itself or SOCH MEDICAL GROUP, PC. to at least 1,000 New Jersey CONSUMERS similar to that of "Exhibit A" attached the First Amended Complaint, which stated which stated an Amount Due, which is different than the amount stated as the Amount Owed.

16.    Admit that the DEBT was incurred primarily for personal, family or household purposes.

17.    Admit "ACB" is a "debt collector" as defined in 15 USC §1692a(6).

18.    Admit that Plaintiff is a "consumer" as defined by 15 USC §1692a(3).

19.    Admit that Plaintiff does not owe the alleged DEBT.

20.    Admit that "ACB" mailed the letter attached to the First Amended Complaint as Exhibit A to Plaintiff.

21.    Admit that "ACB" was not instructed by SOCH MEDICAL GROUP, PC. to increase the balance of Plaintiff's DEBT due to the addition of accrued interest.

22.    Admit that "ACB" does not maintain procedures reasonably adapted to avoid any errors resulting in any of the alleged violations set forth in the Complaint, in accordance with 15 U.S.C. 1692 k(c).

23.    Admit that the letter attached to the First Amended Complaint as Exhibit A, is a "communication" as defined by 15 U.S.C. 1692a(2).

24.    Admit that "ACB" sometimes records telephone calls made by its debt collectors to CONSUMERS when attempting to collect alleged debts.

25.    Admit that "ACB" retains copies of recorded telephone calls made by its debt collectors to CONSUMERS when attempting to collect alleged debts.

26.    Admit that "ACB" violated Section 1692e *et seq.,* of the Fair Debt Collection Practices Act by using deceptive means in an attempt to collect a debt.

27.    Admit that "ACB" has an Errors and Omissions insurance policy.

28.    Admit that "ACB" does not report credit information to the major credit reportig agencies.

29.    Admit that "ACB" and SOCH MEDICAL GROUP, PC. entered into written agreement for collection services to be performed by "ACB".

30.    Admit that Oleg Shnayderman is the registered agent for "ACB".

31.    Admit that Oleg Shnayderman is a shareholder of "ACB".

32.    Admit that Oleg Shnayderman is an officer of "ACB".

33.    Admit that Oleg Shnayderman is in charge of the day-to-day operation of "ACB".

34.    Admit that Oleg Shnayderman owns at least 10% of the stock of "ACB".

35.    Admit that Oleg Shnayderman owns at least 20% of the stock of "ACB".

36.    Admit that Oleg Shnayderman owns at least 30% of the stock of "ACB".

37.    Admit that Oleg Shnayderman owns at least 40% of the stock of "ACB".

38.    Admit that Oleg Shnayderman owns at least 50% of the stock of "ACB".

39.    Admit that Oleg Shnayderman owns at least 10% of the stock of "ACB".

40.    Admit that Oleg Shnayderman owns at least 10% of the stock of "ACB".

41.    Admit that Oleg Shnayderman owns at least 10% of the stock of "ACB".

42.    Admit that Oleg Shnayderman owns at least 10% of the stock of "ACB".

43.    Admit that Oleg Shnayderman owns at least 10% of the stock of 'The Credit Bureau of Monmouth and Ocean Counties, Inc."

44.    Admit that Oleg Shnayderman owns at least 50% of the stock of 'The Credit Bureau of Monmouth and Ocean Counties, Inc."

Dated: January 9, 2015

>*s/ Joseph K. Jones*
> Joseph K. Jones, Esq.
> Law Offices of Joseph K. Jones, LLC
> 375 Passaic Avenue, Suite 100
> Fairfield, New Jersey 07004
> (973) 227-5900 telephone
> (973) 244-0019 facsimile
> jkj@legaljones.com
>
> *Attorneys for Plaintiffs*

## CERTIFICATION OF SERVICE

I, Joseph K. Jones, hereby certify that on this date I caused to be served the

following papers:

**PLAINTIFFS' REQUEST FOR ADMISSIONS SERVED ON
DEFENDANT, ACB RECEIVABLES MANAGEMENT, INC.**

upon:

To:         Jonathan S. Ziss, Esq.
            Goldberg Segalla, LLP
            1700 Market Street, Suite 1418
            Philadelphia, PA 19103-3907
            jziss@goldbergsegalla.com
            *Attorneys for ACB Receivables Management, Inc.*

by electronic mail, facsimile and first class mail.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2015.

s/ *Joseph K. Jones*
Joseph K. Jones

# EXHIBIT E

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., | Civil Action No. 12-2132 (FLW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| JANSSEN PHARMACEUTICALS, INC., *et al.*, | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**,

This matter comes before the Court upon Defendants Alert Marketing, Inc., Janssen

Pharmaceuticals, Inc. and Ortho-McNeil Pharmaceutical, LLC's (identified as Ortho-McNeil

Pharmaceutical, Inc.) (collectively "Defendants") motion to bifurcate discovery.  [Docket Entry

No. 52].  Plaintiff Physicians Healthsource, Inc. ("Plaintiff") opposes Defendants' motion.  The

Court has fully reviewed and considered all of the arguments made in support of and in

opposition to Defendants' motion.  The Court considers same without oral argument pursuant to

L.Civ.R. 78.1(b).  For the reasons set forth more fully below, Defendants' motion is GRANTED.

I.       **Background and Procedural History**

In light of the parties' familiarity with the facts of this matter, they shall not be reinstated

at length herein.  Instead, the Court shall recount only those facts necessary for the resolution of

Defendants' motion to bifurcate.  This case concerns whether two identical unsolicited faxes sent

by Defendants to Plaintiff on or about April 8, 2008 and May 6, 2008 violated the Telephone

Consumer Protection Act ("TCPA").  The faxes concern the reclassification of Levaquin for

insurance purposes.[1]  Plaintiff alleges that the faxes were sent as commercial advertisements in

violation of the TCPA.  In contrast, Defendants argue that the faxes are informational and,

therefore, exempted from the TCPA.

In response to Plaintiff's Complaint, Defendants jointly moved to dismiss Plaintiff's

claims arguing that the faxes as a matter of law were informational and, as such, exempted from

the TCPA.  The District Court held argument on Defendants' motion.  For the reasons set forth

on the record on January 31, 2013 and for those set forth in the Supplemental Opinion dated

February 6, 2013, the District Court granted Defendants' motion to dismiss, finding that "the

faxes are indeed informational and that they include only an incidental amount of commercial

material." (Supplemental Opinion of 2/6/2013 at 1; Docket Entry No. 28).  Consequently, the

District Court determined that the "faxes are not actionable under the TCPA." (*Id.*)

Plaintiff responded to this decision by filing a motion to reconsider the District Court's

January 31, 2013 Order pursuant to FED.R.CIV.P. 59(e) and L.CIV.R. 7.1(i).  In the alternative,

Plaintiff sought leave to file an amended complaint.  The District Court denied Plaintiff's motion

for reconsideration finding that Plaintiff had not asked the court to "correct errors of law or fact

upon which [its] rulings were based in order to prevent manifest injustice, [n]or was there an

intervening change in the prevailing law." (Opinion of 6/6/2013 at 6; Docket Entry No. 43).

Instead, the District Court noted that Plaintiff's motion for reconsideration was based on two

new allegations that Plaintiff referred to as new evidence:  (1) the receiver of the faxes in

question, a physician, never prescribed Levaquin; and (2) because Levaquin was reclassified in

2004, not in 2008 when the faxes were sent, the fax "created a 'false impression that it was being

---

[1] The specific content of the faxes is discussed in detail in the District Court's Supplemental
Opinion dated February 6, 2013 [Docket Entry No. 28].  As such, the Court does not go into
further detail here.

sent for informational purposes.'" (*Id.* (quoting Plaintiff's Opp. Brief at 6)). The District Court found that these new allegations were not evidence for reconsideration purposes and since there was no allegation that the information supporting these allegations was not available when the District Court rendered its initial decision, there was no basis upon which the District Court could reconsider its prior rulings.

The District Court also found that Plaintiff's proposed amended complaint was futile because the only new allegations set forth in the pleading concerned the alleged fact that there was no prior business relationship between the parties. The District Court found these allegations to be insufficient because its "prior holding that the fax is an advertisement is not relevant to a finding of a prior business relationship, and as a result, amending the Complaint to include such allegations would not change the result." (*Id.* at 7). In addition, the District Court noted that Plaintiff's proposed amended complaint was devoid of any allegations that the faxes at issue "could not be considered truly informational" because "Levaquin was actually reclassified in 2004, and since the drug was already a Tier 2 drug in 2008, there was no 'reclassification,' 'up-to-date,' or 'breaking news' reimbursement information" to be disseminated at the time they were sent. (*Id.*) While Plaintiff raised these assertions in its brief, the District Court could not consider same because they were un-pled.

Despite the failures in Plaintiff's proposed amended complaint, the District Court permitted Plaintiff to amend its Complaint, although not in the form submitted with Plaintiff's motion. Instead, the District Court permitted Plaintiff to "amend its Complaint with whatever allegations it deems would be sufficient." (*Id.* at 8). In so doing, the District Court specifically noted that it was not making any findings as to whether Plaintiff's allegations concerning the timing of Levaquin's reclassification could state a claim.

3

Plaintiff filed its Amended Complaint on June 26, 2013. [Docket Entry No. 45].

Defendants filed answers in response to same on July 19, 2013.  [Docket Entry Nos. 47 & 48].

Shortly thereafter, the Court set an Initial Conference with the parties to discuss the schedule to

be set in this matter.  During the Initial Conference, Defendants indicated their desire to bifurcate

discovery.  The Court directed Defendants to file a motion to that effect.  Defendants did so by

filing the instant motion.

Defendants seek to bifurcate discovery into two phases.  During the first phase, the

parties would focus on discovery related to whether the faxes at issue are informational or

whether the informational content is a sham designed to conceal the fact that they are

advertisements.  During the second phase, the parties would conduct discovery on all matters,

including class action issues.  Before the second phase of discovery commences, Defendants

would file a motion for summary judgment on the issue of whether the faxes are informational

and therefore exempted from the TCPA.  Using this approach, the parties would only engage in

class action discovery if Plaintiff survived Defendant's anticipated motion for summary

judgment.

Defendants argue that bifurcating discovery in this matter is warranted in light of the

narrow, potentially dispositive issue that exists concerning whether the faxes at issue are

informational.  Defendants argue that this issue is "totally distinct from class action discovery"

and "can be fully explored in a limited time, with limited costs, and with limited burdens on the

parties and the Court."  (Def. Br. at 4; Docket Entry No. 52).  In contrast, Defendants argue that

unbounded class action discovery involves substantial costs and burdens both for the parties and

the court.  Further, Defendants claim that the burden of class discovery is significantly greater

for defendants than plaintiffs.  Indeed, Defendants contend that "[c]ertification and potential

class liability are a sword of Damocles for Defendants[.]" (*Id.* at 5). Defendants argue that this would be particularly true here where the District Court has previously determined that the faxes at issue are informational. Consequently, Defendants argue that they should not be forced to spend resources engaging in class discovery from the outset. Instead, they argue that the most efficient manner for this case to proceed is for discovery to be bifurcated so that the issue of whether the faxes are informational, and therefore exempted under the TCPA, can be decided first.

Plaintiff opposes Defendants' motion to bifurcate. Plaintiff argues that, despite Defendants' claims to the contrary, bifurcation will not promote efficiencies in the litigation of this matter. In this regard, Plaintiff claims that "[n]o matter what evidence or testimony Defendants could hope to submit to support any forthcoming motion for summary judgment, there will at the very least still remain a genuine question of fact since the documents presented by Plaintiff already show no Tier ranking change." (Pl. Opp. Br. at 2; Docket Entry No. 53). Further, Plaintiff argues that Defendants have not shown that it will be more timely and less costly to litigate this matter by bifurcating discovery. Indeed, Plaintiff claims that "Defendants provide no analysis whatsoever of the expected savings of time and costs, rendering their motion wholly conclusory." (*Id.* at 4).

In contrast, Plaintiff contends that bifurcation will just further delay this case, which has already been "pending for almost eighteen months due in large part to Defendants' insistence that the faxes were informing of a Levaquin Tier change." (*Id.*) Specifically, Plaintiff contends that if this matter is bifurcated, the first phase of discovery will take nearly a year to complete. Plaintiff argues that such an expense of time cannot be justified. Plaintiff also argues that

Defendants "fail to explain just how separation of the Tier change issue from the normal class certification discovery can be accomplished." (*Id.* at 5).

In addition, Plaintiff argues that bifurcation ignores the need to preserve evidence in this TCPA matter. Plaintiff notes that in TCPA cases, electronic discovery involves databases of transmissions records. Plaintiff further notes that both IT and non-IT personnel are responsible for the integrity of these databases. Plaintiff argues that given the different personnel involved in maintaining the databases, there is always a risk that the actual integrity of the databases has been compromised. Plaintiff claims that this issue is compounded by the fact that "the steps taken to actually send the faxes at issue may involve known *and even* unknown outside parties or vendors" coupled with the common practice in data storage to delete data on quick intervals to increase efficiencies and decrease costs. (*Id.* at 7). As such, Plaintiff argues that there is a risk that vendors, both known and unknown, may be deleting or destroying databases relevant to this case. Plaintiff argues that bifurcation will only multiply problems associated with evidence preservation by delaying Plaintiff's ability to secure evidence for almost a year.

Indeed, Plaintiff argues that it will be inherently prejudiced if this matter is bifurcated. In this regard, Plaintiff claims that "[s]ince no discovery has occurred in this case, Plaintiff will be forever prejudiced if evidence relevant to proving this case, evidence in the form of electronic data, is innocently destroyed or deleted as a matter of course by anyone who participated in the sending of the faxes at issue here." (*Id.* at 8). For these reasons, Plaintiff argues that Defendants' motion to bifurcate discovery should be denied.

## II.      Analysis

Federal Rule of Civil Procedure 42(b) governs requests to bifurcate.  According to Rule

42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order

a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party

claims."  Under Rule 42(b), "a district court has broad discretion in separating issues and claims

for trial as part of its wide discretion in trial management."  *Medpointe Healthcare, Inc. v. Hi-*

*Tech Pharmacal Co., Inc.*, Civil Action No. 03-555 (MLC), Civil Action No. 04-1686 (MLC),

2007 U.S. Dist. LEXIS 4652, at *12-13 (D.N.J. Jan. 22, 2007) (internal quotation marks and

citation omitted).  Further, the broad discretion afforded courts in handling discovery disputes

extends to decisions over bifurcating discovery.  *See Weiss v. First Unum Life Ins. Co.*, Civil

Action No. 02-4249 (GEB), 2008 WL 755958, *1 (March 19, 2008); *see also Bandai America*

*Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 74 (3d Cir. 1985) (holding that bifurcation orders

and orders controlling order of discovery are reviewed for abuse of discretion).

Here, the Court finds that bifurcating discovery as proposed by Defendants is warranted

under Rule 42(b).  In this regard, the Court agrees with Defendants that a narrow, potentially

dispositive issue exists concerning whether the faxes sent to Plaintiffs are informational and

therefore not actionable under the TCPA.  Further, the Court is not persuaded by Plaintiff's

argument that the information contained in and attached to its Amended Complaint regarding the

lack of Levaquin Tier changes since at least 2004 precludes summary judgment being granted in

Defendants' favor.  Defendants have already referenced evidence of Tier changes occurring as

late as 2007.  Conflicting evidence does not always preclude summary judgment.  Moreover, the

District Court never determined that Plaintiff's now asserted sham allegations do, in fact, state a

claim.  As a result, even absent Tier changes, the District Court could find that the faxes are

informational. As a result, depending on what evidence is ultimately presented, the District Court may determine that summary judgment is warranted.

In addition, the Court finds that the issue concerning whether the faxes here are informational is totally distinct from class issues. Unlike Plaintiff, the Court finds that there will be no significant overlap between the two and therefore no real danger of a duplication of efforts or corresponding increase in litigation costs. Moreover, the Court also finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery. While Plaintiff faults Defendants for not supporting their claims concerning the burdens and costs associated with class action discovery, it is generally recognized that class actions involve the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.]" *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,* Civ. No. 11-00011, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013). It is also generally understood that the costs can be particularly "enormous" for defendants. *Id.*

Similarly, the Court finds Plaintiff's projection regarding how long the first phase of discovery will take to be unreasonable. The discovery at issue in phase one is narrow and relates solely to whether the faxes sent to Plaintiff are informational or whether their apparent informational content is a sham. Given this limited scope of discovery, there is simply no reason why it should take close to a year to complete. Instead, the Court is confident that it can be conducted in approximately 4 months.

Further the Court is not convinced that Plaintiff will be prejudiced by bifurcation. While Plaintiff raises concerns over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive. First, the faxes at issue were sent in the Spring of

2008, nearly four years before Plaintiff elected to file suit.  If evidence preservation and the

elapse of time were a substantial concern, one would have expected this case to have been filed

more expediently.  Second, the fact that no discovery has taken place to date can hardly be

blamed on Defendants.  In response to Plaintiff's original Complaint, Defendants filed a motion

to dismiss.  Defendants succeed on that motion:  the District Court determined that Plaintiff had

failed to assert a viable claim under the TCPA.  In response to the District Court's decision,

Plaintiff moved for reconsideration or in the alternative to file an amended Complaint.  The

District Court denied Plaintiff's motion for reconsideration and found that Plaintiff's proposed

amended complaint failed to state a claim under the TCPA.  Nevertheless, the District Court

permitted Plaintiff to file an amended pleading, albeit not in the form attached to the motion for

reconsideration.  Plaintiff filed its Amended Complaint on June 26, 2013, over 14 months after

the initial Complaint was filed.  Defendants certainly are not responsible for delaying discovery

during this period of time.  Quite to the contrary, they moved to dismiss Plaintiff's Complaint

and they succeeded on that motion.  Third, Defendants have notified third parties of this lawsuit

and have put them on notice to preserve evidence.  Under these circumstances, the Court finds

that Plaintiff will not be prejudiced by an additional 4 month delay caused by bifurcating

discovery into two phases.

Everything considered, the Court finds that bifurcating discovery into two phases will

promote the efficient resolution of this matter.  It will allow the Court to address a narrow,

potentially dispositive issue in a timely and cost effective manner with no significant prejudice to

Plaintiff.  Consequently, the Court hereby bifurcates discovery as requested by Defendants.  The

parties are directed to submit a proposed schedule for fact discovery concerning whether the

faxes sent were informational or whether their apparent informational content was a sham and

the faxes were in reality advertisements.  The schedule submitted shall have this phase of discovery closing no later than June 13, 2014.[2]

**III.   Conclusion**

For the reasons set forth above, Defendants motion to bifurcate discovery is GRANTED. An appropriate Order follows.


Dated:  February 4, 2014


s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The Court notes that after Defendants' motion to bifurcate was filed, Defendants filed a motion for summary judgment.  In response, Plaintiff has filed an opposition arguing that certain discovery is needed in order to respond to Defendants' motion for summary judgment.  This Opinion does not reach that issue, but only addresses Defendants' motion to bifurcate.

# EXHIBIT F



**CHARLES BRITTINGHAM and LONI BRITTINGHAM, individually and on behalf of class, Plaintiffs, v. CERASIMO, INC., and DOES 1-10, Defendants.**

**2:08-CV-216-TLS-PRC**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION**

*2008 U.S. Dist. LEXIS 99076*

**December 8, 2008, Decided**
**December 8, 2008, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Brittingham v. Cerasimo, Inc., 2009 U.S. Dist. LEXIS 32064 (N.D. Ind., Apr. 14, 2009)*

**COUNSEL:** [*1] For Charles Brittingham, individually and on behalf of a class, Loni Brittingham, individually and on behalf of a class, Plaintiffs: Daniel A Edelman, Thomas E Soule, LEAD ATTORNEYS, Edelman Combs Latturner & Goodwin LLC, Chicago, IL.

For Cerasimo Inc, Defendant: Edward W Hearn, LEAD ATTORNEY, Johnson & Bell Ltd - Mer/IN, Merrillville, IN.

**JUDGES:** MAGISTRATE JUDGE PAUL R. CHERRY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PAUL R. CHERRY

**OPINION**

**OPINION AND ORDER**

This matter is before the Court on a Motion to Bifurcate Discovery [DE 25], filed by Defendant Cerasimo, Inc., on October 31, 2008.

**PROCEDURAL AND FACTUAL BACKGROUND**

On July 28, 2008, Plaintiffs filed a Class Action Complaint alleging that Defendants violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), *15 U.S.C. § 1681*. On August 15, 2008, Plaintiffs filed a Motion for Class Certification. Defendant Cerasimo,

Inc., ("Cerasimo") filed a Motion to Dismiss Plaintiffs' Complaint Pursuant to *Rule 12(b)(1)* on September 24, 2008.

On October 31, 2008, Cerasimo filed a Motion to Bifurcate Discovery, requesting that the Court bifurcate discovery to limit it to the issue of whether or not Cerasimo "willfully" [*2] violated FACTA. On November 14, 2008, Plaintiffs filed their Response brief in opposition and on the same date Cerasimo filed its Reply brief.

**ANALYSIS**

The decision to bifurcate discovery is a matter committed to the discretion of the trial court as it has the inherent power to control its docket. *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc., No. 02 C 2523, 2004 U.S. Dist. LEXIS 4698, 2004 WL 609326, *2 (N.D.Ill. March 23, 2004)*. Under *Federal Rule of Civil Procedure 23(c)(1)(A)*, a court "must-at an early practicable time-determine by order whether to certify the action as a class action." *Rule 23(c)(1)(A)'s* current language represents a change from the previous version of the Rule, which provided that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." *Chavez v. Ill. State Police, 251 F.3d 612, 630 (7th Cir. 2001)*. The 2003 Amendments explain that *Rule 23(c)(1)(A)'s* language was changed from "as soon as practicable" to the current reading because the previous phrase "neither reflect[ed] prevailing practice nor capture[d] the many valid reasons that may justify deferring the initial certification [*3] decision." *Fed. R. Civ. P. 23(c)(1)(A)* advisory committee notes (2003

2008 U.S. Dist. LEXIS 99076, *

Amendments). The advisory committee notes further provide examples of "valid reasons" for deferring the class certification decision, including that "[o]ther considerations may affect the timing of the certification decision. The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." *Id.* "Thus, it appears that if deciding the merits would help to determine whether the certification is proper based upon the claims of the named representative, bifurcation may be proper." *Stavroff v. Midland Credit Management, Inc., Cause No. 3:05-CV-127 AS, 2005 U.S. Dist. LEXIS 11640, *4 (N.D.Ind. June 8, 2005).*

Cerasimo argues that discovery should be bifurcated and limited to the issue of Cerasimo's liability, particularly, whether Cerasimo committed a "willful" alleged violation of FACTA. Cerasimo argues that this approach would promote judicial economy and preserve resources and expenses. To prevail on the merits of their FACTA claim, Plaintiffs must show that Cerasimo engaged in a "willful" violation [*4] [1] of FACTA. Accordingly, Cerasimo argues that discovery should be limited to the merits of Plaintiffs' case because, if they cannot show willful conduct by Cerasimo, then their claim will fail and the parties would not need to conduct discovery addressing the class certification issue. Cerasimo argues that Plaintiffs will be required to conduct discovery and prove a willful violation regardless of whether a class is ever certified, but that if no willful violation exists, then requiring the parties to also conduct discovery on the class certification issue will be a waste of resources and an unnecessary expense. Therefore, Cerasimo argues that it is judicious to require bifurcated discovery so that the parties may not have to incur the extra expense of class certification discovery as Plaintiffs' claim might fail on the merits.

> 1 Liability for "willfully" failing to comply with FRCA extends to reckless conduct. *Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 127 S.Ct. 2201, 2209, 167 L. Ed. 2d 1045 (2007).*

In response, Plaintiffs argue that discovery should not be bifurcated because bifurcation is not preferred by courts. In support, Plaintiffs rely on cases in which the Seventh Circuit expressed its preference for conducting [*5] class certification prior to a ruling on the merits. The Seventh Circuit has previously held that "in most circumstances, a judge should determine whether to grant or deny certification prior to ruling on the merits, as indicated by the text of *Rule 23.*" *Chavez, 251 F.3d at 630.* The Seventh Circuit expressed its preference for this policy because class certification does not depend on the outcome of the suit. *Id.* More recently, the Seventh Cir-

cuit has stated that "[c]onceivably [the case before it] may be the exceptional case . . . in which deciding the merits of the case first and the motion for class certification second is proper." *Wiesmueller v. Kosobucki, 513 F.3d 784, 787 (7th Cir. 2008).*

However, the cases that Plaintiffs rely on in opposition to bifurcation fail to take account of the 2003 Amendments or the "valid reasons" for deferring the class certification decision. *See Id.* (relying on *Cowen v. Bank of United of Texas, FSB, 70 F.3d 937, 941-42 (7th Cir. 1995)* (basing its holding on the pre-2003 Amendment version of *Rule 23(c)(1)*)); *Larson v. JPMorgan Chase & Co., 530 F.3d 578, 581 (7th Cir. 2008).* Further, Seventh Circuit cases, interpreting the pre-2003 version of *Rule 23(c)(1)(A),* [*6] have also ruled that "'practicable' allows for wiggle room." *Cowen, 70 F.3d at 941.* Accordingly, *Rule 23(c)(1)(A)* does not mandate a ruling on class certification prior to a ruling on the merits in every instance.

Plaintiffs also argue that discovery on merits and class certification issues overlap, so having bifurcated discovery will be more expensive and create the possibility that if requested evidence is related to both merits and class certification issues, Cerasimo may refuse to disclose this information because of its implication as to the class certification issue.

Although bifurcating discovery may make the litigation more expensive and might require Plaintiffs to undergo expensive discovery to survive summary judgment on the merits, this does not demonstrate that bifurcation in this case would be inefficient. *In re Guidant Corp. ERISA Litigation, Master Docket No. 1:05-cv-1009-LJM-TAB, 2008 U.S. Dist. LEXIS 88595, 2008 WL 4810743, *2 (S.D.Ind. Oct. 29, 2008); Stavroff, 2005 U.S. Dist. LEXIS 11640, at *6.* If Plaintiffs cannot prove the merits of their case by showing a willful violation by Cerasimo, then valuable time and resources will be spent on discovery for the class certification issue when Plaintiffs' [*7] claim will be meritless. Further, if Plaintiffs have not suffered any loss, which, as Cerasimo alleges, Plaintiffs have failed to allege in their Complaint, then bifurcation will help to expedite the proceedings and greatly reduce expenses to both sides. *In re Guidant Corp. ERISA Litigation, 2008 U.S. Dist. LEXIS 88595, 2008 WL 4810743, at *2.*

Further, to the extent that Plaintiffs argue that bifurcation and the overlap of merits and class certification issues may lead to Cerasimo refusing to disclose information relevant to merits issues, the Court advises the parties that to the extent that information is requested by the Plaintiffs and is relevant to the merits issues, Cerasimo must disclosure such information, even if there is a possibility that it may overlap with the issue of class

2008 U.S. Dist. LEXIS 99076, *

certification, so long as it is relevant to the issue of willfulness. Accordingly, Plaintiffs fail to show that it is less efficient to proceed with the merits of this case.

**CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Defendant, Cerasimo, Inc.'s Motion to Bifurcate Discovery [DE 25] and hereby **ORDERS** that the parties shall first address the merits of Plaintiffs' case, particularly, the issue of Defendant Cerasimo's [*8] alleged willful violation of FACTA. The Court hereby **STAYS** the issue of class certification until a resolution of the liability phase and **SETS** this matter for a telephonic *Rule 16(b)* Preliminary Pretrial Conference on **January 8, 2009 at 10:30 a.m.** before Magistrate Judge Paul R. Cherry, to be initiated by the Court.

So ORDERED this 8th day of December, 2008.

/s/ Paul R. Cherry

MAGISTRATE JUDGE PAUL R. CHERRY

UNITED STATES DISTRICT COURT

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LOGAN LOREAUX, et al, | : |
| | : |
| Plaintiffs, | : Civil Action No. 14-710 (JAP) |
| v. | : **OPINION** |
| ACB RECEIVABLES MANAGEMENT | : |
| Defendant. | : |

PISANO, District Judge.

     Plaintiffs Logan Loreaux and Katelyn Jones (together referred to herein as "Plaintiff")

bring this action alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692

*et seq.* ("FDCPA")  Defendant ACB Receivables Management Inc. ("Defendant") has moved

to dismiss the action pursuant to Federal Rule of Procedure 12(b)(6).  The Court decides the

matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil

Rule 78.1.  For the reasons below, Defendant's motion is denied.

## I. BACKGROUND

     The following facts are taken from the complaint (and the documents attached to the

complaint) and presumed to be true for the purposes of this motion.  Logan Loreaux, an

infant, received medical care at the Soch Medical Group on July 7, 2013.  Amended

Complaint at D.I. 4 (hereinafter "Complaint" or "Compl.") at ¶ 15, Ex. C (Health Insurance

Claim Form).  An amount of $130 was charged to this patient's account for the medical

services that were rendered.  *Id.*  This obligation was not paid and ultimately became past due.

Compl. ¶ 17.  The account was subsequently turned over to Defendant for collection. Compl.

¶ 18.  On December 13, 2013, Defendant sent correspondence, flagged "Important Collections

Notice", to the "Parents of Logan Loreaux" seeking payment on the account.  Compl. Ex. A.

      The top portion of this correspondence is a payment coupon to be detached and

submitted with the requested payment.  In addition to the relevant addresses, this payment

coupon contains three boxes.  The first box contains an account number.  The second box

contains highlighted bold text that states, "**Amount Due: 191.57.**"  The third box contains the

following in bold text, "**Amount Enclosed:_____**".

      Below this payment coupon is the body of the correspondence.  It explains that the

account "has been referred to [Defendant] for collections procedures."  *Id.*  It further provides

as follows:

> Unless you notify this office within 30 days after receiving this notice that you
> dispute the validity of this debt or any portion thereof, this office will assume
> this debt is valid.  If you notify this office in writing within 30 days from
> receiving this notice, this office will: obtain verification of the debt or obtain a
> copy of a judgment and mail you a copy of such judgment or verification.  If
> you request this office in writing within 30 days after receiving this notice, this
> office will provide you with the name and address of the original creditor, if
> different from the current creditor.
>
> This is an attempt to collect a debt.  Any information obtained will be used for
> that purpose.  This communication is from a debt collector.
>
> Contact MISS SKY at 112 to resolve this account.

Compl. Ex. A.  This text is followed by an account number, a PIN number and, appearing for

the second time in the correspondence, in bold uppercase letters, "**AMOUNT DUE 191.57.**"

Finally, below all of this is a short table containing 4 columns, and two rows. The first column in the table identifies the "Creditor" as "Soch Medical Group PC". The next identifies the relevant "Account Number." The heading for the third column is "Regarding," and below that states "Logan Loreaux." Finally, the last column in the table is headed "Amt Owed", under which it states, "130.00".

In February 2014 Plaintiff filed her complaint in this matter that Defendant has violated multiple provisions of the FDCPA. D.I. 1. In March, Plaintiff filed an amended complaint. D.I. 4.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed .R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Therefore, in order to withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

B.  Fair Debt Collections Practices Act

The FDCPA 15 U.S.C. § 1692, *et seq.*, regulates debt collection practices.[1]  As stated by the Third Circuit, "[b]ecause the FDCPA is a remedial statute, ... we construe its language broadly, so as to effect its purpose. ... In doing so, we evaluate communications between lenders and debtors from "the perspective of the 'least sophisticated debtor'," so as to protect "the gullible as well as the shrewd." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453-54 (3d Cir. 2006) (citations omitted).  As such, "[t]he FDCPA requires that collection letters must present certain information in a non-confusing manner." *Morse v. Kaplan*, 468 F. App'x 171, 172 (3d Cir. 2012).  A communication from a debt collector is considered deceptive under the FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008). Notably, even though the "least sophisticated debtor" standard is a low one, it still should serve to "prevent [] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to

---

[1] For purposes of this motion, the Court assumes that Plaintiff is a "consumer" that Defendant is a "debt collector" under § 1692(a).

4

read with care." *Dibattista v. Buckalew, Frizell & Crevina, LLP*, 574 Fed. Appx. 107 (3d Cir. 2014) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000)).

Plaintiff alleges in this action that the communication she received from Defendant violated the FDCPA. First, Plaintiff alleges that under the "least sophisticated debtor" standard, Defendant's correspondence violates 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff alleges that the correspondence violates this section because, according to Plaintiff, the "least sophisticated consumer" is forced to guess how much they are required to pay to settle the debt, pointing to the fact that the correspondence refers both to an amount "due" ($191.57) and an amount "owed" ($130.00). Second, for this same reason, Plaintiff alleges that Defendant violated § 1692e(2)(A), which prohibits debt collectors from making a "false representation of ... the character, amount, or legal status of any debt[.]" Finally, again for the same reasons, Plaintiff claims Defendant violated § 1692(g) because its correspondence failed to state "the amount of the debt" as required by the statute.

At their core, all of Plaintiff's arguments boil down to essentially one thing: an allegation that the "least sophisticated consumer", upon receipt of the correspondence at issue, "cannot even decipher" how much she is being requested to pay (or how much in total she owes) because the correspondence references two amounts -- $191.57 at the amount "due" and $130.00 as the amount "owed." In response to Plaintiff's allegations and in support of its motion, Defendant asserts, among other things, that the two amounts shown in the correspondence are not necessarily conflicting and could represent two amounts from two different dates on which Plaintiff received medical treatment from Soch Medical Group. In

fact, despite expressly noting that matters outside the pleadings are generally inappropriate on a Rule 12(b)(6) motion, Defendant's brief states that the reason for two different amounts appearing on the correspondence is "that there are two outstanding amounts due to SOCH that ACB is collecting." Pl. Opening Br. at 1 n.1. According to Defendant, there is nothing false or misleading about the correspondence because, contrary to assertions by Plaintiff that the correspondence failed to accurately state the amount of the debt, the figures in the letter are an accurate reflection of the two outstanding amounts owed by Plaintiff.

These contentions regarding the different amounts on the correspondence, while ostensibly provided to the Court as an "FYI," underlie Defendant's arguments on this motion. To the extent Defendant argues for dismissal based upon facts, such as these, that can only be established by turning to materials outside the pleadings, such arguments are not appropriate on a motion under Rule 12(b)(6). Such matters are more appropriately addressed on a motion for summary judgment. Consequently, the Court shall deny Defendant's motion to dismiss.

III. CONCLUSION

For the reasons above, Plaintiff's motion is denied. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: November 26, 2014